UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK HARDIMAN,

      Petitioner,

                                Case No. 1:06-cv-177
v.                                    Hon. Robert J. Jonker

CINDI CURTIN,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

This case arises from the December 21, 1998 kidnapping and shooting death of Larry Taylor.  A jury convicted petitioner of first-degree premeditated murder, M.C.L. § 750.316, conspiracy to commit first-degree premeditated murder, M.C.L. § 750.157a, kidnapping, M.C.L. § 750.439, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. *People v. Mark Preston Hardiman*, No. 232355 (Mich. App. April 27, 2003).  He was sentenced as a fourth habitual offender, M.C.L. § 769.12, to life imprisonment without parole for the first-degree murder conviction, to be served (1) concurrently with two concurrent terms of life imprisonment for the kidnapping and conspiracy convictions, and (2) consecutively to a two-year prison term for the felony-firearm conviction.  *Id.*

Petitioner presented the following five issues in his direct appeal to the Michigan

Court of Appeals:

    I.     Did the court err when it admitted evidence of a pistol and ammunition taken from a car that [petitioner] was driving, which had no relationship to the case at bar, denying [petitioner] due process and a fair trial?

    II.    Was [petitioner] deprived of his Sixth Amendment right to a fair trial, where his counsel failed to call a witness who could have provided exculpatory evidence and a viable defense as to how the alleged murder occurred?

    III.    Did the trial court err in failing to enforce discovery rules despite a discovery request and discovery order denying [petitioner] his due process right to a fair trial and his Sixth Amendment right to confrontation?

    IV.    Was [petitioner] denied his due process of law, a fair trial and his Sixth Amendment right to confront his accuser, where the trial court limited his right to cross-examine as to bias, considerations given a chief prosecution witness, and restricted his ability to put on a plausible defense?

    V.    Did the court err in denying [petitioner] a fair trial because of repeated instances of prosecutorial misconduct?

*See* Brief on Appeal (docket no. 30). The Michigan Court of Appeals affirmed the conviction.

*People v. Mark Preston Hardiman*, No. 232355.

Petitioner raised the same five issues in his application for leave to appeal to the Michigan Supreme Court, along with the following new issue:

[A]libi witness. Affidavit of Keith Hopskin. Supplemental brief on appeal that the state appellate attorney refused to file in the court of appeals.

*See* docket no. 31. The Michigan Supreme Court denied petitioner's application. *People v. Mark Preston Hardiman*, No. 123951 (Mich. Oct. 31, 2003).

At the conclusion of his direct appeal, petitioner filed motions for relief from

2

judgment and for a new trial, which the trial court denied.  *People v. Mark Preston Hardiman*, No.

00-01139-FC (17th Cir. Ct. March 16, 2004).  Petitioner filed a delayed application for leave to

appeal the following claims:

> Did the Circuit Court abuse its discretion in denying [petitioner's] motion for relief
> from judgment pursuant to MCR 6.504(b) et. seq. on his claims of: (1) ineffective
> assistance of appellate counsel; (2) newly discovered evidence of prosecutorial
> misconduct, where the alleged claims are extrinsic in nature and not of record, and
> development of a record is required through evidentiary hearing, to substantiate
> [petitioner's] claims for review?

*See* docket no. 32.  The Michigan Court of Appeals denied the delayed application "for failure to

meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Mark Preston*

*Hardiman*, No. 260265 (Mich. App. Aug. 16, 2005).

Then, petitioner raised three issues in an application for leave to appeal to the

Michigan Supreme Court:

> I.  The trial court abused its discretion when it denied [petitioner's]
>     motion for relief from judgment.
>
> II.  [Petitioner] was denied due process and a fair trial when the
>      prosecutor intimidated [petitioner's] alibi witness.
>
> III.  Cause and actual prejudice.  [Petitioner] was denied the effective
>       assistance of counsel on direct appeal when appellate counsel failed
>       to submit [petitioner's] supplemental brief.

*See* docket no. 33.  The Michigan Supreme Court denied the application because petitioner "failed

to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Mark*

*Preston Hardiman*, No. 129498 (Mich.  Dec. 27, 2005).

Now, petitioner has raised seven grounds for habeas relief:

> I.  The trial court erred when it admitted evidence of a pistol and
>     ammunition taken from a car that petitioner was driving which had no

3

relation to the case at bar denying petitioner his due process right to a fair trial.

II.     Petitioner was deprived his Sixth Amendment right to a fair trial where his counsel failed to call a witness who could have provided exculpatory evidence and viable defense of how the alleged murder occurred.

III.    The trial court erred in failing to enforce discovery rules despite a discovery request and discovery order, denying petitioner his due process right to a fair trial and his Sixth Amendment right to confrontation.

IV.     Petitioner was denied a fair trial, due process of law, and his Sixth Amendment right to confront his accusers, where the trial court limited his right to cross examine as to bias, considerations given a chief prosecution witness, and restricted his ability to put on a plausible defense.

V.      The court erred in denying [petitioner] a fair trial because of repeated instances of prosecutorial misconduct.

VI.     The trial court abused its discretion when it failed to utilize proper procedure before allowing Keith Hopskin to assert his Fifth Amendment right against self-incrimination and abused its discretion in denying petitioner's motion for relief from judgment and requests for evidentiary hearings regarding issues of: (1) prosecutorial misconduct; (2) new evidence; (3) ineffective assistance of appellate counsel, where the alleged claims were not matters of record and the evidence was newly discovered and not cumulative, thus the state court's post conviction proceeding was inadequate denying petitioner a "full and fair" hearing.

VII.    Petitioner was denied effective assistance of counsel on direct appeal when appellate counsel failed to submit petitioner's pro per supplemental brief in accordance with petitioner's instructions and in compliance with Adm. Order 1981-7(11).

Petition (docket no. 1).

## II.      Procedurally defaulted claims

### A.      Procedural default doctrine

4

Respondent contends that some of petitioner's claims asserted in Issues V, VI and VII are barred from habeas review under the procedural default doctrine, which provides that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural ground, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.

As an initial matter, petitioner's claim of the ineffective assistance of appellate counsel set forth in Issue VII is not procedurally defaulted. Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default doctrine. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004). In addition, petitioner's claims as set forth in Issues V and VI are so interrelated with the merits of his other claims as to make the procedural default analysis burdensome and to some extent redundant. "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v.*

*Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997).  *See also*, *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case).  *Cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).  For these reasons, the court will forego the procedural default analysis and review the merits of petitioner's claims.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### IV.     Petitioner's habeas claims

### A.     State law claims not cognizable on habeas review

### 1.     Admission of other bad acts evidence (Issue I)

First, petitioner contends that the trial court improperly allowed evidence that a firearm was confiscated from his automobile on a previous occasion. Petitioner contends that the introduction of this evidence of a prior bad act violated MRE 404(b), which provides in pertinent part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b)(1). The Michigan Court of Appeals concluded that the trial court did not abuse its discretion in admitting this evidence. *People v. Mark Preston Hardiman*, No. 232355, slip op. at 2-3.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Consequently, state court rulings on the admission of evidence are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial. *See Estelle*, 502 U.S. at 67-70; *Clemmons*, 34 F.3d at 357-358. State court rulings cannot rise to the level of a due process violation unless they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (internal quotations and brackets omitted). Petitioner's claim does not raise such a fundamental principle. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Accordingly, petitioner's claim should be denied.

## 2.    Trial court's failure to enforce a discovery order (Issue III)

Next, petitioner contends that the trial court failed to enforce a pre-trial order requiring the prosecution provide the defense with "copies of physical evidence regarding the

matter" and copies of the return of any search warrants.  Petition at 32.  Specifically, petitioner states

that on the day of trial, the prosecutor had not provided certain telephone records of Shavone

Braylock, a prosecution witness and the victim's girlfriend at the time of the murder.  Trial Trans.

II at 96-98; IV at 552-56. Petitioner contends that the court's failure to enforce its order and provide

him with this exculpatory evidence violated his constitutional rights.  Petition at 32-33.

The Michigan Court of Appeals addressed this claim as follows:

> Hardiman next argues that the trial court failed to enforce its discovery order,
> thereby denying him a fair trial.  We disagree because this argument is based on a
> misunderstanding of the record.  Contrary to Hardiman's suggestion on appeal,
> Hardiman's counsel did not receive the challenged telephone records on or after
> October 26, 2000, the day Shavone Braylock testified.  Rather, the record reflects that
> Hardiman's counsel admitted that he received the telephone records on October 23,
> 2000, the day the jury was selected.  He was clearly in possession of those records
> before he made his opening statement and before any testimony was received.  The
> missing records that were referenced when Braylock testified were those related to
> a conviction in 61st District Court.  Thus, there is no merit to the issue as briefed by
> Hardiman on appeal.

*People v. Mark Preston Hardiman*, No. 232355, slip op. at 3.

After reviewing the record, the court agrees that petitioner's argument is based upon

a factually incorrect basis.  Petitioner's trial counsel admitted that he had the evidence "the day the

jury was selected, our first day here."  Trial Trans. IV at 552.  The jury was selected on October 23rd,

two days before the trial commenced on October 25th.  Jury Voir Dire Trans.; Trial Trans. I.

Accordingly, petitioner's counsel had access to the telephone records prior to trial.

The Michigan Court of Appeals' resolution of this claim was neither contrary to, or

an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this

ground.

### B. Ineffective assistance of trial counsel to call a witness (Issue II)

Next, petitioner contends that his trial counsel was ineffective for failing to call a witness to testify for the defense. The Michigan Court of Appeals addressed this issue as follows:

> Hardiman next argues that his counsel rendered ineffective assistance of counsel by failing to present Keith Hopskin's testimony after promising the jury, in his opening statement, that it would hear Hopskin's testimony and by failing to determine that Keith Hopskin would invoke the Fifth Amendment at trial. In order to establish a claim of ineffective assistance of counsel, a defendant must affirmatively show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *People v. Stanaway*, 446 Mich. 643, 687-688; 521 NW2d 557 (1994). This Court presumes the effective assistance of counsel, and a defendant bears a heavy burden of proving otherwise. *People v. Charles Williams*, 240 Mich.App 316, 331; 614 NW2d 647 (2000).
>
> During opening statement, Hardiman's counsel outlined what he anticipated the jury would hear from Hopskin. On the ninth day of trial, however, defense counsel learned that Hopskin planned to plead the Fifth Amendment. Hopskin presented himself to the trial court, outside the presence of the jury, and indicated that, while he previously agreed to testify, he had changed his mind. After reviewing the situation, the trial court agreed that Hopskin was entitled to exercise his Fifth Amendment rights. Hardiman cannot establish that counsel's conduct with respect to Hopskin was ineffective. Before counsel made his opening statement, he interviewed Hopskin, who agreed to testify. Counsel's plan to call Hopskin to testify was a matter of trial strategy. *See People v. Garza*, 246 Mich.App 251, 255; 631 NW2d 764 (2001). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy nor will it assess counsel's competence with the benefit of hindsight." *Id.* Further, once the trial court determined that Hopskin was unavailable, [FN1] counsel could not call Hopskin as a witness. Thus, Hardiman's argument that counsel was ineffective for failing to present Hopskin as a witness has no merit. While Hopskin's decision late in trial may have hurt the defense, counsel was not responsible for this event. Moreover, there is no evidence that counsel could have anticipated this event.
>
> [FN1. Hardiman does not challenge the trial court's determination that Hopskin was entitled to plead the Fifth Amendment or that he was unavailable.]

*People v. Mark Preston Hardiman*, No. 232355, slip op. at 3.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington.* 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Whether to call a particular witness is one of a lawyer's strategic decisions. *See United States v. Medved*, 905 F.2d 935, 942 (6th Cir. 1990). A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *McQueen*, 99 F.3. at 1311 (internal quotation marks omitted). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Here, counsel's trial strategy included calling Hopskin as a witness. *See* Trial Trans. I at 57-58. In a hearing outside of the jury's presence, Hopskin testified that he met with petitioner's counsel and, with his own counsel's permission, agreed to testify at petitioner's trial. Trial Trans.

11

IX at 1685-86.  However, on the ninth day of trial, Hopskin changed his mind and asserted his Fifth

Amendment right to remain silent.  *Id.* at 1684-92.  After reviewing a statement that Hopskin gave

to the police, the court held that this witness was entitled to exercise his Fifth Amendment right and

not testify.  *Id.* at 1691.  This court will not deem defense counsel deficient because a witness,

represented by an attorney, voluntarily appeared in court but reneged on an agreement to testify and

also asserted his Fifth Amendment right.  Both of these events were outside of petitioner's counsel's

control.

### C.        Trial court's limitation on cross examination (Issue IV)

Next, petitioner contends that the trial court improperly limited petitioner's right to

cross-examine two witnesses.  First, petitioner contends that defense counsel was prohibited from

cross-examining Elijah Allen regarding his inducements for testifying on behalf of the prosecution.

Second, petitioner contends that defense counsel was prohibited from cross-examining the victim's

sister regarding the prior relationship that existed between petitioner and the victim.

The Michigan Court of Appeals addressed the issue as follows:

> Hardiman additionally argues that his cross-examination of two prosecution
> witnesses was improperly limited by the trial court.  "Whether a trial court has
> properly limited cross-examination is reviewed for an abuse of discretion."  *People
> v. Minor*, 213 Mich. App 682, 684; 541 NW2d 576 (1995).  "The right of
> cross-examination is not without limit; neither the Confrontation Clause nor due
> process confers an unlimited right to admit all relevant evidence or cross-examine on
> any subject."  *People v. Adamski*, 198 Mich. App 133, 138; 497 NW2d 546 (1993).
> The trial court has wide latitude to impose reasonable limits on cross-examination
> based on various concerns, including harassment, prejudice, confusion, or
> interrogation that is repetitive or marginally relevant.  *Id.*  "Cross-examination may
> be denied with respect to collateral matters bearing only on general credibility . . . as
> well as on irrelevant issues."  *People v. Canter*, 197 Mich. App 550, 564; 496 NW2d
> 336 (1992).

> Hardiman's argument that his cross-examination of Allen was improperly

limited has no merit.  The record does not indicate that Hardiman was precluded from examining Allen about his motives for testifying or about any deals that he may have tried to obtain in exchange for his testimony.  The context makes clear that counsel was instead prohibited from exploring issues covered by the attorney-client privilege between Allen and his attorney, who represented him on another matter.  Moreover, we note that Hardiman has not articulated how cross-examining Allen about conversations with his attorney would have revealed any relevant information.  Our review of the record demonstrates that any information gained by such cross-examination would have been, at best, marginally relevant to Allen's credibility.  We disagree with Hardiman's claim that the trial court improperly limited cross-examination.

Similarly, we find no improper limitation on Hardiman's cross-examination of Lashonda Taylor, the victim's sister.  The trial court did not prohibit Hardiman from asking Lashonda whether the victim and Hardiman were roommates in 1994 or 1995.  Instead, it indicated that if the question were asked, the door would be opened for the prosecutor to explore the context in which the men were roommates.  Hardiman's counsel thereafter refrained from asking the question.  The trial court's ruling was not an abuse of discretion.

*People v. Mark Preston Hardiman*, No. 232355, slip op. at 4.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).  Thus, trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

### 1.      Elijah Allen

Petitioner's claim regarding Elijah Allen is based upon a faulty factual premise.

Elijah Allen was a prosecution witness, who testified that petitioner kidnapped the victim and shot him at "point-blank range, in the forehead."   Trial Trans. VII at 1193.   Petitioner's counsel performed an extensive cross-examination of Allen.   *Id.* at 1208-47, 1260-65.   The only subject matter barred from cross-examination was Allen's statements made to his attorney that were subject to the attorney-client privilege.   Petitioner's counsel noted that Allen was non-responsive to certain questions on the prosecutor's direct examination as to whether he had spoken with an attorney (Helen Nieuwenhuis) regarding this murder.   Trial Trans. VII at 1316.   Ms. Nieuwenhuis was representing Allen on an unrelated drug charge at the time.   *Id.*   Counsel asserted that Allen's comments would have prompted Ms. Nieuwenhuis to contact the prosecutor's office and use the information to help her client in the drug case.   *Id.* at 1317.   Petitioner's counsel asked the court if he could "get into issues covered under the attorney-client privilege or potentially call Miss Nieuwenhuis, because it is my position that the witness had opened this door because he talked about it."   *Id.* at 1316.   The trial court noted that it had previously rejected defense counsel's request to call Ms. Nieuwenhuis as a witness and that Allen did not mention giving this information to his attorney.   *Id.* at 1318.   Based on these circumstances, the court denied defense counsel's request to pursue the issue on cross-examination or to call Ms. Nieuwenhuis as a witness.   *Id.*

Petitioner sought to cross-examine Allen with respect to privileged matters.   "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."   *Taylor v. Illinois*,   484 U.S. 400, 410 (1988).   Accordingly, the trial court could properly bar defense counsel from pursuing Allen's privileged testimony on cross-examination.

### 2.   LaShonda Taylor

Petitioner contends that the court prohibited cross-examination of the victim's sister, Lashonda Taylor, with respect to his prior relationship with the victim.  Once again, petitioner's claim is based upon a faulty factual premise.  Outside of the presence of the jury, defense counsel pointed out that the victim and petitioner were roommates in prison in 1994 or 1995.  Trial Trans. III at 334-35.  Defense counsel sought to cross-examine Ms. Taylor regarding the fact that petitioner and the victim were "roommates" in 1994 and 1995.  *Id.* at 335.  The Court ruled that this line of questioning would open the door to petitioner's prison history.  *Id.*  The trial court did not prevent defense counsel from pursuing a cross examination of this issue.  Rather, the court opined that this line of questioning would open the door to a discussion of petitioner's prior criminal activity and incarceration.  Given this ruling, it appears that defense counsel chose not to open the door to testimony regarding petitioner's criminal record.  This would have been a routine trial decision by defense counsel.  The fact that the court apprised counsel of a possible consequence of the decision, did not make it the court's decision.

### 3.      Summary

The Michigan Court of Appeals' resolution of the cross examination issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this ground.

### D.      Prosecutorial misconduct (Issue V)

Next, petitioner contends that the prosecutor engaged in misconduct by appealing to the jury's sympathy for the victim and arguing to the jury that they had a civic duty to convict

petitioner. The Michigan Court of Appeals addressed the issue as follows:

> Finally, Hardiman argues on appeal that he was denied a fair trial because of repeated instances of prosecutorial misconduct. We disagree.
>
> Hardiman objected when the prosecutor began his rebuttal argument by referring to the victim's family. Hardiman argued that the prosecutor was appealing to the jurors' sympathy. The trial court sustained the objection. We disagree with Hardiman's claim that the prosecutor's comment immediately following the trial court's ruling constituted an improper plea for juror sympathy that requires reversal. While the comment appealed to the jurors' sympathy in an offhand manner, the argument was not a blatant appeal for sympathy. Further, the argument was not so inflammatory that it prejudiced Hardiman. Under the circumstances, any error could have been cured by a cautionary instruction. *See People v. Mayhew*, 236 Mich.App 112, 123; 600 NW2d 370 (1999). Hardiman has not demonstrated that the comment at issue constituted plain error requiring reversal. *People v. Aldrich*, 246 Mich.App 101, 110; 631 NW2d 67 (2001); *People v. Carines*, 460 Mich. 750, 763-764; 597 NW2d 130 (1999).
>
> Hardiman next argues that the prosecutor improperly denigrated defense counsel and made an improper civic duty argument in his rebuttal remarks. Because Hardiman failed to object to the allegedly improper remarks, we review this issue for plain error. *Aldrich*, *supra* at 110. An improper civic duty argument injects into trial issues broader than the guilt or innocence of a defendant or encourages the jurors to suspend their powers of judgment. *People v. Truong*, 218 Mich.App 325, 340; 553 NW2d 692 (1996). It appeals to the jurors' sense of civic duty to urge them to convict the defendant or improperly plays upon their general fears and prejudices. *People v. Bahoda*, 448 Mich. 261, 282-283; 531 NW2d 659 (1995). Our review of the challenged remarks reveals that the prosecutor did not inject issues broader than the guilt or innocence of Hardiman and did not appeal to the fears or prejudices of the jury. Because the prosecutor did not make an improper civic duty argument, no plain error occurred.
>
> We find, however, that certain of the prosecutor's comments did denigrate Hardiman's counsel in some respect. The comments at issue, referring to Hardiman's counsel as "having a little bit of carnival in him" and being "a little bit of slighted hand," among others, were not supported by the evidence or reasonable inferences drawn from the evidence. Nevertheless, we do not believe that the comments require reversal. Indeed, Hardiman has not demonstrated that the comments affected the outcome of the case. The jury was instructed that the attorneys' arguments were not evidence. Moreover, "a well-tried, vigorously argued case should not be overturned on the basis of a few isolated improper remarks that could have been corrected had an objection been lodged. . . . " *People v. Green*, 228

Mich.App 684, 693; 580 NW2d 444 (1998). This unpreserved issue does not warrant reversal.

Finally, we disagree with Hardiman that the cumulative effect of the prosecutor's misconduct denied him a fair trial. The cumulative effect of several minor errors may warrant reversal in some cases even if the individual errors in the case would not warrant reversal. *People v. Cooper*, 236 Mich.App 643, 659-660; 601 NW2d 409 (1999). In order for reversal to be warranted on the basis of cumulative error, the errors at issue must be of consequence. *Id.* In this case, the instances of arguably questionable argument by the prosecutor were not errors of consequence, and reversal is unwarranted.

*People v. Mark Preston Hardiman*, No. 232355, slip op. at 4-5.

The court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.* Nevertheless, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v.*

*Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209,

219 (1982)).  The court should consider four factors in determining whether a prosecutor's improper

remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the

prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks

were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before

the jury; and (4) the total strength of the evidence against the accused.  *Bates v. Bell*, 402 F.3d 635,

641 (6th Cir. 2005).

### 1.     Statements evoking juror sympathy

### a.     Victim's family

After the defense gave its closing argument, the prosecutor commenced rebuttal by

making a reference to the victim's family, i.e., "It absolutely amazes the Taylor family to see ---."

Trial Trans. X at 1770.  Petitioner's counsel objected before the prosecution finished the sentence.

*Id.*  The court advised the prosecutor to "[j]ust leave the Taylor family out of it."  *Id.* at 1771.  The

prosecutor's incomplete reference to the victim's family was not improper.  *See Simpson v. Jones*,

238 F.3d 399, 409 (6th Cir. 2000) (prosecutor did not act improperly by asking jurors to put

themselves in the place of the victim's loved ones).

### b.     Comparing the victim to petitioner

Next, petitioner complained that the prosecutor made the following statement on

rebuttal:

> Then it absolutely amazes me, ladies and gentlemen, having [defense counsel's] argument, that I can't help but wonder how well Larry would have done in his trial, had he had the service of a lawyer as skilled as [defense counsel], had Larry had all of the rights and freedoms that an accused person has instead of a ride in a trunk.

*Id.* Assuming that the prosecutor's remarks comparing the circumstances of the victim's murder to petitioner's defense counsel and his constitutional rights were improper, the court concludes that petitioner was not prejudiced by this brief remark. "[W]e assume that a jury has the common sense to discount the hyperbole of an advocate, discounting the force of the argument." *United States v. Vaccaro*, 115 F.3d 1211, 1216 (5th Cir. 1997).

### 2. Statements regarding jurors' civic duty

Next, petitioner contends that the prosecutor's rebuttal improperly argued that the jury had a civic duty to convict him:

> My adversary in this, and fortunately that's I guess how I'll have to view him at this point, is very good. I've already learned he apparently got an undergrad degree in I think microbiology, micro chemistry, whatever came up when I misspoke myself and I thought I was asking him a question. We certainly know that he's a hunter, and he knows a lot about firearms.
>
> What we've learned now in his closing arguments is that he's got a little bit of carnival in him too, a little bit of slighted hand and a little bit of misdirection, and that's why we have jurors, because, ladies and gentlemen, you get to sit back and you get to decide, based on what you just hear in argument, what really matters.
>
> Now, we can take his scientific training and his legal training, and his sportsmanlike intellect on hunting and bullets, and all of that, and we can suddenly apply that to Elijah Allen? We can suddenly lock Elijah Allen in to every estimate of timer and distance that he gives based on something that he has buried over a year? And we can say to you that, whoa, that's evidence that he's lying, because it couldn't have happened that way that he drew it in their mind [sic]. And I don't care about their mind.
>
> I will not spend my rebuttal argument making an apology to you for the kinds of witnesses that [petitioner] associates with and that he hangs around. I have tried to show you why the idea that they would create this whole scheme makes no sense. Why Larry Taylor would be the victim. It makes no sense. The only one who's got these motives, the only one who has this reason to go to this extreme, that has this anger, that has this ability, is [petitioner].
>
> [Defense counsel] can make light of his own expertise on what kind of bullets

19

are rare and what aren't, et cetera, et cetera, et cetera, et cetera --. . .

Trial Trans. X at 1171-73.  When defense counsel objected to the prosecutor's statements as

mischaracterizing his argument and the evidence, the judge overruled the objection, stating that "the

jury can decide what the evidence is." *Id.* at 1773.

       As an initial matter, these remarks were in response to defense counsel's closing

argument, which relied on scientific evidence to contest the credibility of some witnesses.  Criminal

defense counsel's conduct is relevant in determining whether the prosecutor's remarks unfairly

prejudiced the defendant.  *See United States v. Young*, 470 U.S. 1, 11-13 (1984).  Where defense

counsel's remarks invite a response, the prosecutor may respond in order to "right the scale."  *Id.*

During closing argument, petitioner's counsel indicated a knowledge of deer hunting, firearms,

ammunition and lividity in dead animals, and offered this knowledge to assist the jurors in evaluating

the circumstances of the victim's kidnaping and murder.  For example, counsel referred to the

coagulation of blood in a dead deer to question the testimony of witnesses regarding when and where

the victim died.  Trial Trans. X at 1744-49, 1769.  Counsel also referred to the use of hollow point

shells by deer hunters in describing the bullets used in the murder.  *Id.* at 1766-67, 1769.  In this

context, it was not improper for the prosecutor to respond to defense counsel's argument, when

counsel appeared to use his knowledge of biology and ballistics  to interpret the evidence.

       With respect to the "civic duty" argument, a prosecutor has a "duty to refrain from

improper methods calculated to produce a wrongful conviction."  *Puertas v. Overton*, 168 Fed.

Appx. 689, 701 (6th Cir. 2006), *quoting Viereck v. United States*, 318 U.S. 236, 248 (1943).

However, a prosecutor's "appeals to the jury to act as the community conscience are not per se

impermissible," unless those appeals are "calculated to incite the passions and prejudices of the

jurors." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir.2001).  Given the nature of defense counsel's closing arguments,  and the suggestion that counsel had some level of expertise in biology and ballistics, it appears to the court that the prosecutor could properly remind the jury that they must decide the case based on the evidence admitted at trial rather than counsel's arguments.  The prosecutor's arguments appear to be an attempt to respond to issues raised in defense counsel's closing argument rather than comments calculated to incite the jurors' passions or prejudices.

### 3.      Cumulative effect

Finally, petitioner contends that he was denied due process by the cumulative effect of the prosecutor's misconduct.  Petitioner has failed to demonstrate harm or error resulting from prosecutorial misconduct.  Accordingly, his claim that the cumulative error of the misconduct rendered his trial unfair – much less fundamentally unfair – is without merit.  *United States v. Sherill*, 388 F.3d 535, 539 (6th Cir. 2004) (no cumulative error where the no harm resulted from alleged acts of prosecutorial misconduct).

### 4.      Summary

The Michigan Court of Appeals' resolution of the prosecutorial misconduct claims discussed above was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this ground.

### E.      Keith Hopskin's testimony (Issue VI)

Next, petitioner contends that the trial utilized an improper procedure during trial.

As previously discussed, Keith Hopskin testified outside the presence of the jury, that while he had previously agreed to testify, he had changed his mind, and based upon this testimony that trial court agreed that Hopskin was entitled to exercise his Fifth Amendment rights. Trial Trans. IX at 1685-92. Petitioner contends that the trial court improperly allowed Hopskin to assert his Fifth Amendment rights outside of the presence of the jury rather than take the stand and assert the rights in the presence of the jury. Petitioner's Brief at 45-46. The Sixth Circuit rejected this legal argument in *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005), holding that "[b]ecause the Supreme Court has never held that permitting a witness to assert his or her Fifth Amendment privilege against self-incrimination without taking the witness stand violates a defendant's right to a fair trial, the trial court did not act contrary to clearly established federal law when it allowed [the witness] to invoke the privilege before taking the witness stand." Accordingly, the trial court did not commit a constitutional error in addressing Hopskin's assertion of his Fifth Amendment rights outside the presence of the jury.

Petitioner also contends that the trial court should have considered an affidavit executed by Hopskin's as a basis for granting his motion for relief from judgment under MCR 6.500 *et seq.* In his affidavit, executed more than a year after petitioner's conviction, Hopskin made statements that were arguably exculpatory for petitioner. Whether this affidavit was sufficient for the trial court to grant petitioner's motion for relief from judgment under the Michigan Court Rules raises an issue of state law that is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68; *See also Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) ("a claim stemming from state procedural rules . . . is beyond our purview on habeas review"). For these reasons, petitioner's claims raised in Issue VI should be denied.

22

### F.     Ineffective assistance of appellate counsel (Issue VII)

Finally, petitioner contends that appellate counsel was ineffective for failing to file his supplemental "Rule 11" brief.   Petitioner appears to be referring to Michigan Supreme Court Administrative Order 1981-7(11) ("AO 1981-7(11)"), which, at the time of his appeal, authorized the filing of so-called "Standard 11" pro se briefs as follows:[1]

> When a defendant insists that a particular claim be raised on appeal against the advice of counsel, counsel shall inform the defendant that he or she has the right to present that claim to the appellate court in propria persona.  Should the defendant choose to proceed in such manner, counsel shall provide procedural advice and such clerical assistance as may be required to conform the defendant's pleadings for acceptability to the court.

It appears that petitioner submitted a Standard 11 brief to his appellate counsel, but counsel failed to file it.  *See* letter from Attorney Lester A. Pollak (Aug. 1, 2003) attached to Petition. Assuming that filing a Standard 11 brief falls within counsel's duty to provide "procedural advice" and "clerical assistance" under AO 1981-7(11), it appears that counsel did not perform this duty. Nevertheless, petitioner has failed to demonstrate that counsel's inaction constituted ineffective assistance under the Sixth Amendment.  In *Dowdy v. Sherry*, No. 06-cv-10735,  2008 WL 5188827 (E.D. Mich. Dec. 10, 2008), the court discussed a similar claim against an appellate attorney for failing to assist the petitioner in filing a "Rule 11" supplemental appellate brief.  In *Dowdy*, the court held that the defendant's appellate counsel was not ineffective for failing to assist the defendant in filing his brief, stating in pertinent part as follows:

> A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of*

---

[1] Pursuant to the provisions of Administrative Order No. 2004-6, "Standard 11" briefs are now referenced as "Standard 4" briefs.  *See People v. James*, No. 253248, 2005 WL 1106363 at *1 (Mich. App. May 10, 2005).

*California*, 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself. However, the Sixth Amendment does not include any right to appeal. *Id.* at 160. The Supreme Court also rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause [of the Fourteenth Amendment], because "[U]nder the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding". *Martinez*, 528 U.S. at 161.

There is no constitutional entitlement to submit a pro se appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir.2000). By accepting the assistance of counsel, the criminal appellant waives his right to present pro se briefs on direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir.1996); *See also Henderson v. Collins*, 101 F.Supp.2d 866, 881 (S.D.Ohio 1999); *aff'd in part*, *vacated in part on other grds* 262 F.3d 615 (6th Cir.2001) (defendant who was represented by counsel and also sought to submit pro se brief upon appeal did not have right to such hybrid representation). Thus, any failure by appellate counsel to submit any pro se briefs on behalf of Petitioner does not present a constitutional question.

*Dowdy*, 2008 WL 5188827 at *10.

The court agrees with the reasoning in *Dowdy* that counsel was not constitutionally ineffective for failing to file a pro se appellate brief. Accordingly, petitioner's claim raised in Issue VII should be denied.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: <u>February 13, 2009</u>                    <u>/s/ Hugh W. Brenneman, Jr.</u>
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge

24

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).